

FILED

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2009 Grand Jury

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VINCENT ANTHONY RAMIREZ,<br>aka Toro,<br>aka T,<br>aka Big T,<br>RAYMOND RAMIREZ,<br>aka Butter,<br>aka Chacho,<br>DESIREE IRENE RODRIGUEZ,<br>aka Des,<br>JOANNE CARMEN RODRIGUEZ,<br>ERMINA RUIZ,<br>aka Billie,<br>MANUEL JOSEPH ZAMBRANO,<br>aka Chico,<br>aka Uncle Manuel,<br>ADRIAN AGUILAR,<br>ARMANDO BAZUA,<br>aka Archie,<br>DAVID DIAZ,<br>aka Scrappy,<br>aka Gato,<br>JOSE ANTONIO LIAN,<br>aka Buzzard,<br>VITO ALBERTO ANTONUCCI,<br>JIMMY AREVALO,<br>aka Dreamer,<br>BRIAN BAILEY,<br>aka Glassman, | ) | No. CR 09 00471<br><br>I N D I C T M E N T<br><br>[21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(iii): Conspiracy to Possess with Intent to Distribute and to Distribute Methamphetamine; 21 U.S.C. § 841(a)(1): Possession of Methamphetamine With Intent to Distribute; 21 U.S.C. § 861: Use of Minor in Drug Operations; 21 U.S.C. § 843(b): Use of A Communication Facility In Committing A Felony Drug Offense; 18 U.S.C. § 922(g)(1): Felon in Possession of Firearm; 18 U.S.C. § 1956(h): Conspiracy to Launder Money; 18 U.S.C. § 2(a): Aiding and Abetting; 21 U.S.C. § 853(a), 18 U.S.C. § 924(d), and 28 U.S.C. § 2461(c), 18 U.S.C. § 982(a): Criminal Forfeiture] |

JAC:jac

JAMES BAILEY,
aka Jimbo,
JOHN CARDER EDWARDS,
ROBERT EUGENE HESS,
HERLEEN HURLEY,
aka Charlene,
SHEILA ANN MCCOY,
JOSEPH MARTINEZ MUNGARRO, JR,
aka Uncle Joe,
CARLA MARIE NUNEZ,
DANIEL TIMOTHY O'CONNELL,
ESEQUIEL OROPEZA,
aka Fernie,
FELICIA C. OROPEZA,
MARK ANTHONY ORTIZ,
ANDY REAL,
aka Pretty Boy,
JOHN SCOTT RENAUDO,
CHARLES LEE THEROUX,
DANIEL MICHAEL TORRES,
aka Bird, and
PAUL RICHARD WHEAT,

Defendants.

The Grand Jury charges:

COUNT ONE

[21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(viii)]

A. OBJECTS OF THE CONSPIRACY

Beginning on an unknown date and continuing until in or about April 2009, in Los Angeles County, within the Central District of California, and elsewhere, defendants VINCENT ANTHONY RAMIREZ, also known as ("aka") Toro, aka T, aka Big T ("V.RAMIREZ"), RAYMOND RAMIREZ, aka Butter, aka Chacho ("R.RAMIREZ"), DESIREE IRENE RODRIGUEZ, aka Des ("D.RODRIGUEZ"), JOANNE CARMEN RODRIGUEZ ("J.RODRIGUEZ"), ERMINA RUIZ, aka Billie ("RUIZ"), MANUEL JOSEPH ZAMBRANO, aka Chico, aka Uncle Manuel ("ZAMBRANO"), ADRIAN AGUILAR ("AGUILAR"), ARMANDO BAZUA, aka Archie ("BAZUA"), DAVID DIAZ, aka Scrappy, aka Gato ("DIAZ"),

JOSE ANTONIO LIAN, aka Buzzard ("LIAN"), VITO ALBERTO ANTONUCCI ("ANTONUCCI"), JIMMY AREVALO, aka Dreamer ("AREVALO"), BRIAN BAILEY, aka Glassman ("B.BAILEY"), JAMES BAILEY, aka Jimbo ("J.BAILEY"), JOHN CARDER EDWARDS ("EDWARDS"), ROBERT EUGENE HESS ("HESS"), HERLEEN HURLEY, aka Charlene ("HURLEY"), SHEILA ANN MCCOY ("MCCOY"), JOSEPH MARTINEZ MUNGARRO, JR, aka Uncle Joe ("MUNGARRO"), CARLA MARIE NUNEZ ("NUNEZ"), DANIEL TIMOTHY O'CONNELL ("O'CONNELL"), ESEQUIEL OROPEZA, aka Fernie ("E.OROPEZA"), FELICIA C. OROPEZA ("F.OROPEZA"), MARK ANTHONY ORTIZ ("ORTIZ"), ANDY REAL, aka Pretty Boy ("REAL"), JOHN SCOTT RENAUDO ("RENAUDO"), CHARLES LEE THEROUX ("THEROUX"), DANIEL MICHAEL TORRES, aka Bird ("TORRES"), and PAUL RICHARD WHEAT ("WHEAT"), co-conspirators John Mark Sotelo, aka Silly, aka Silly Boy, aka Chills, aka Johnny 5000 ("Sotelo"), and Richard Robert Mueller, aka Brain ("Mueller"), and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally commit the following offenses:

1. to possess with intent to distribute at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine, or at least 50 grams of actual methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii); and

2. to distribute at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine, or at least 50 grams of actual methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii).

B. MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

The objects of the conspiracy were to be accomplished in substance as follows:

1. Defendant V.RAMIREZ would sell methamphetamine to co-conspirator Sotelo and others who would re-sell it to other customers.

2. Defendant RUIZ would assist defendant V.RAMIREZ in the sale of methamphetamine by, among other things, packaging and storing methamphetamine, delivering methamphetamine to customers, and collecting drug proceeds.

3. Defendant ZAMBRANO would assist defendant V.RAMIREZ by, among other things, storing pound quantities of methamphetamine at defendant ZAMBRANO's residence, and delivering them to defendant's distribution location.

4. Defendant D.RODRIGUEZ would assist defendant V.RAMIREZ in the sale of methamphetamine by, among other things, delivering methamphetamine to customers, and collecting drug proceeds.

5. Defendant J.RODRIGUEZ would assist defendant V.RAMIREZ by storing drug proceeds, methamphetamine, and cutting agent at her residence.

6. Defendant R.RAMIREZ would assist defendant V.RAMIREZ by storing defendant V.RAMIREZ's drug proceeds and firearms at defendant R.RAMIREZ's residence.

7. Defendant MUNGARRO would assist defendant V.RAMIREZ by transporting methamphetamine and firearms for defendant V.RAMIREZ.

8. Defendant F.OROPEZA would assist defendant V.RAMIREZ by

packaging and delivering methamphetamine to drug customers.

9. Defendants AGUILAR and LIAN would sell methamphetamine to defendant V.RAMIREZ.

10. Defendant DIAZ would sell methamphetamine to defendant V.RAMIREZ.

11. Defendant BAZUA would buy methamphetamine from defendant DIAZ and re-sell it to other customers.

12. Defendants ANTONUCCI, AREVALO, B.BAILEY, J.BAILEY, EDWARDS, HESS, HURLEY, MCCOY, NUNEZ, O'CONNELL, E.OROPEZA, ORTIZ, REAL, RENAUDO, THEROUX, TORRES, and WHEAT would buy methamphetamine from defendant V.RAMIREZ and re-sell it to other customers.

13. Co-conspirator Sotelo would purchase methamphetamine from defendant V.RAMIREZ, and re-sell the methamphetamine to other customers.

14. Co-conspirator Mueller would assist co-conspirator Sotelo in the sale of methamphetamine by, among other things, transporting methamphetamine and collecting drug proceeds.

C. <u>OVERT ACTS</u>

In furtherance of the conspiracy and to accomplish the objects of the conspiracy, the defendants, and others known and unknown to the Grand Jury, committed various overt acts in Los Angeles County, within the Central District of California, on or about the following dates and at approximately the following times, including, but not limited to, the following:

1. On June 19, 2006, at 12:30 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ agreed to sell a half pound of methamphetamine to co-conspirator Sotelo.

2. On July 26, 2006, at 7:51 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ agreed to supply two ounces of methamphetamine to co-conspirator Sotelo for $1,100.

3. On August 4, 2006, at 2:34 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ agreed to supply four ounces of methamphetamine to co-conspirator Sotelo.

4. On August 10, 2006, at 12:50 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ told co-conspirator Sotelo that defendant V.RAMIREZ would purchase 10 firearms if co-conspirator Sotelo's supplier of firearms had that many firearms for sale.

5. On September 4, 2006, at 12:05 p.m., using coded language during a telephone conversation, defendant AREVALO ordered a quarter of an ounce of methamphetamine from defendant V.RAMIREZ and said he would pick it up.

6. On September 4, 2006, at 12:07 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ instructed defendant RUIZ to make a quarter-ounce package of methamphetamine for defendant AREVALO, who was on his way.

7. On September 4, 2006, at 1:57 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ agreed to supply two ounces of methamphetamine to co-conspirator Sotelo.

8. On September 5, 2006, at 10:16 a.m., using coded language during a telephone conversation, defendant MCCOY ordered one ounce of methamphetamine from V.RAMIREZ.

9. On September 5, 2006, at 1:13 p.m., using coded

language during a telephone conversation, defendant V.RAMIREZ instructed R.R., a minor, to make a one-ounce package of methamphetamine for defendant MCCOY.

10. On September 5, 2006, at 2:44 p.m., using coded language during a telephone conversation, defendant NUNEZ ordered one ounce of methamphetamine from defendant V.RAMIREZ, and told him that her customer wanted a half ounce of methamphetamine.

11. On September 6, 2006, at 1:35 p.m., using coded language during a telephone conversation, defendant MCCOY told defendant V.RAMIREZ that she needed another ounce of methamphetamine, and that she had money that she owed him.

12. On September 6, 2006, at 3:45 p.m., using coded language during a telephone conversation, defendant AREVALO ordered half an ounce of methamphetamine from defendant V.RAMIREZ.

13. On September 7, 2006, at 11:24 a.m., using coded language during a telephone conversation, defendant V.RAMIREZ asked defendant DIAZ to exchange three pounds of methamphetamine that defendant V.RAMIREZ had purchased from defendant DIAZ, because the methamphetamine was of poor quality.

14. On September 7, 2006, at 3:34 p.m., using coded language during a telephone conversation, defendant HURLEY ordered half an ounce of methamphetamine from defendant V.RAMIREZ, and told him she would pick it up.

15. On September 7, 2006, at 5:24 p.m., using coded language during a telephone conversation, co-conspirator Sotelo and defendant V.RAMIREZ agreed that defendant V.RAMIREZ would sell three ounces of methamphetamine to co-conspirator Sotelo.

16. On September 8, 2006, at 3:43 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ asked defendant TORRES to obtain cutting agent and deliver it to defendant RUIZ, and then defendant V.RAMIREZ would instruct defendant RUIZ to give methamphetamine to defendant TORRES.

17. On September 8, 2006, at 6:49 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ instructed R.R., a minor, to transport methamphetamine.

18. On September 10, 2006, at 11:31 a.m., using coded language during a telephone conversation, defendant AREVALO ordered half an ounce of methamphetamine from defendant V.RAMIREZ.

19. On September 10, 2006, at 1:12 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ agreed to supply defendant NUNEZ with one ounce of methamphetamine, which he would leave with defendant RUIZ.

20. On September 10, 2006, at 2:54 p.m., using coded language during a telephone conversation, defendant J.RODRIGUEZ told defendant V.RAMIREZ that she had cutting agent for him, and she asked defendant V.RAMIREZ for prices of cocaine and methamphetamine.

21. On September 10, 2006, at 4:38 p.m., using coded language during a telephone conversation, defendant AREVALO asked defendant V.RAMIREZ about the price for a quarter-pound of methamphetamine.

22. On September 11, 2006, at 5:27 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ asked defendant ZAMBRANO to take one pound of methamphetamine to

defendant J.RODRIGUEZ's residence, and defendant ZAMBRANO agreed.

23. On September 11, 2006, at 7:54 p.m., using coded language during a telephone conversation, defendant D.RODRIGUEZ told defendant WHEAT that she had the two ounces of methamphetamine he had ordered.

24. On September 12, 2006, at 10:08 a.m., using coded language during a telephone conversation, defendant V.RAMIREZ instructed defendant D.RODRIGUEZ to take $1,000 that defendant WHEAT had given her for methamphetamine, and put it in a stash location.

25. On September 12, 2006, at 12:26 p.m., using coded language during a telephone conversation, defendant ZAMBRANO told defendant D.RODRIGUEZ that he dropped methamphetamine off at defendant J.RODRIGUEZ's residence.

26. On September 12, 2006, at 12:55 p.m., using coded language during a telephone conversation, defendant D.RODRIGUEZ told defendant REAL to come by and pick up two ounces of methamphetamine he had ordered.

27. On September 13, 2006, at 6:42 p.m., using coded language during a telephone conversation, defendant D.RODRIGUEZ told defendant V.RAMIREZ that $2,000 of drug proceeds had been hidden under a bed in a stash location.

28. On September 13, 2006, at 7:35 p.m., using coded language during a telephone conversation, defendant E.OROPEZA ordered half an ounce of methamphetamine from defendant V.RAMIREZ, which defendant V.RAMIREZ agreed to supply.

29. On September 14, 2006, at 3:51 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ

told defendant TORRES that he would sell a quarter pound of methamphetamine to defendant TORRES for $2,100.

30. On September 14, 2006, at 4:06 p.m., using coded language during a telephone conversation, defendant TORRES told defendant V.RAMIREZ that defendant TORRES' customer wanted to buy one ounce of methamphetamine to try, and defendant TORRES would buy the ounce from defendant V.RAMIREZ for $600.

31. On September 14, 2006, at 8:06 p.m. and 8:09 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ instructed R.R., a minor, to make two quarter-pound packages of methamphetamine for defendant THEROUX, who would give R.R. $6,000.

32. On September 14, 2006, at 8:25 p.m., using coded language during a telephone conversation, defendant THEROUX asked defendant V.RAMIREZ if defendant THEROUX could pay $5,900 for the half pound of methamphetamine, and also give $40 to R.R.

33. On September 15, 2006, at 5:10 p.m., using coded language during a telephone conversation, co-conspirator Sotelo said that he would need to purchase a half pound of methamphetamine tomorrow from defendant V.RAMIREZ.

34. On September 15, 2006, at 8:45 p.m., using coded language during a telephone conversation, defendant ANTONUCCI asked defendant V.RAMIREZ to sell him one ounce of methamphetamine for $550, and defendant V.RAMIREZ agreed.

35. On September 16, 2006, at 2:31 p.m., using coded language during a telephone conversation, co-conspirator Sotelo told defendant V.RAMIREZ that co-conspirator Sotelo wanted to purchase a quarter or half pound of methamphetamine from

defendant V.RAMIREZ.

36. On September 17, 2006, at 12:46 p.m., using coded language during a telephone conversation, defendant AGUILAR told defendant V.RAMIREZ that defendant AGUILAR and defendant LIAN could sell pounds of methamphetamine to defendant V.RAMIREZ at a price of $9,700 per pound.

37. On September 17, 2006, at 12:46 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ told defendant AGUILAR that he would go to defendant AGUILAR's location to check out the quality of methamphetamine that defendants AGUILAR and LIAN had for sale.

38. On September 17, 2006, at 2:01 p.m., using coded language during a telephone conversation, co-conspirators Sotelo and Mueller agreed that co-conspirator Mueller would pick up methamphetamine from defendant V.RAMIREZ for co-conspirator Sotelo.

39. On September 17, 2006, at 2:38 p.m., using coded language during a telephone conversation, co-conspirator Sotelo told defendant V.RAMIREZ that co-conspirator Mueller had $1,100 or $1,600, which would be enough for co-conspirator Mueller to pick up two or three ounces of methamphetamine from defendant V.RAMIREZ for co-conspirator Sotelo.

40. On September 18, 2006, at 10:24 a.m., using coded language during a telephone conversation, defendant V.RAMIREZ ordered seven pounds of methamphetamine from defendant DIAZ, and asked defendant DIAZ to give him a good price.

41. On September 18, 2006, at 2:24 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ

agreed to supply four ounces of methamphetamine to defendant ORTIZ.

42. On September 18, 2006, at 3:26 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ instructed defendant RUIZ to make four ounce packages of methamphetamine for defendant ORTIZ, and she agreed.

43. On September 19, 2006, at 2:43 p.m., using coded language during a telephone conversation, defendant MCCOY told defendant V.RAMIREZ that she had money she owed him, and asked him if he had any new methamphetamine because the methamphetamine he had sold her was of poor quality, causing her customers to not call her back.

44. On September 19, 2006, at 6:44 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ told defendant E.OROPEZA that he had gotten more methamphetamine, and had two ounces of methamphetamine for defendant E.OROPEZA.

45. On September 21, 2006, at 4:49 p.m., using coded language during a telephone conversation, defendant LIAN told defendant V.RAMIREZ that he had pounds of methamphetamine for sale at $9,500 per pound.

46. On September 22, 2006, at 2:50 p.m., using coded language during a telephone conversation, co-conspirator Sotelo asked defendant V.RAMIREZ to set aside a quarter pound of methamphetamine for co-conspirator Sotelo so that defendant V.RAMIREZ would not sell out before co-conspirator Sotelo could purchase the methamphetamine from defendant V.RAMIREZ.

47. On September 22, 2006, at 3:36 p.m., using coded language during a telephone conversation, defendant DIAZ offered

to send defendant V.RAMIREZ 10 pounds of methamphetamine.

48. On September 22, 2006, at 3:36 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ ordered five pounds of methamphetamine from defendant DIAZ.

49. On September 22, 2006, at 7:43 p.m., using coded language during a telephone conversation, defendant RENAUDO told defendant V.RAMIREZ that he had money for defendant V.RAMIREZ, and ordered four more ounces of methamphetamine from defendant V.RAMIREZ.

50. On September 23, 2006, at 8:57 p.m., using coded language during a telephone conversation, defendant D.RODRIGUEZ agreed to go to defendant J.RODRIGUEZ's residence to get cutting agent for defendant V.RAMIREZ.

51. On September 25, 2006, at 11:41 a.m., using coded language during a telephone conversation, co-conspirator Sotelo and defendant V.RAMIREZ agreed that defendant V.RAMIREZ would tell defendant RUIZ that co-conspirator Sotelo was ready to pick up methamphetamine so that defendant RUIZ would have the methamphetamine ready for co-conspirator Sotelo.

52. On September 25, 2006, at 1:45 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ agreed to supply three ounces of methamphetamine to co-conspirator Sotelo for $1,600.

53. On September 28, 2006, at 4:36 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ told defendant ANTONUCCI to bring money to defendant V.RAMIREZ, and defendant V.RAMIREZ would give him another ounce of methamphetamine.

54. On September 30, 2006, at 4:09 p.m., using coded language during a telephone conversation, defendant D.RODRIGUEZ agreed to go to defendant J.RODRIGUEZ's residence to get cutting agent for defendant V.RAMIREZ.

55. On September 30, 2006, at 4:20 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ told co-conspirator Sotelo that the price of a half pound of the good quality methamphetamine was $4,000.

56. On September 30, 2006, at 4:53 p.m., using coded language during a telephone conversation, co-conspirator Sotelo and defendant V.RAMIREZ agreed that co-conspirator Sotelo would send co-conspirator Mueller to pick up a half pound of methamphetamine from defendant V.RAMIREZ and that co-conspirator Sotelo would be allowed to return the methamphetamine if co-conspirator Sotelo did not like the quality.

57. On September 30, 2006, at 6:05 p.m., using coded language during a telephone conversation, co-conspirators Sotelo Mueller agreed that co-conspirator Mueller would not touch the methamphetamine co-conspirator Mueller had picked up from defendant V.RAMIREZ until co-conspirator Sotelo confirmed the weight of the methamphetamine.

58. On October 3, 2006, at 6:30 p.m., using coded language during a telephone conversation, defendant ANTONUCCI told defendant V.RAMIREZ that he had money that he owed defendant V.RAMIREZ, and defendant ANTONUCCI ordered another ounce of methamphetamine.

59. On October 3, 2006, at 6:30 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ told

defendant ANTONUCCI that he would go to defendant ANTONUCCI's location.

60. On October 6, 2006, at 12:42 p.m., using coded language during a telephone conversation, defendant NUNEZ ordered two ounces of methamphetamine from defendant V.RAMIREZ on behalf of another individual.

61. On October 7, 2006, at 9:35 a.m., using coded language during a telephone conversation, defendant V.RAMIREZ told defendant NUNEZ to go to defendant RUIZ's house, where defendant V.RAMIREZ had left two ounces of methamphetamine for defendant NUNEZ.

62. On October 7, 2006, at 9:58 a.m., using coded language during a telephone conversation, defendant V.RAMIREZ instructed defendant F.OROPEZA to weigh 28 grams of methamphetamine to be delivered to defendant E.OROPEZA, and instructed her to deliver two 28-gram bags of methamphetamine to another drug customer.

63. On October 10, 2006, at 10:11 a.m., using coded language during a telephone conversation, defendant V.RAMIREZ asked defendant D.RODRIGUEZ to find out if there was any cutting agent at defendant J.RODRIGUEZ's residence.

64. On October 10, 2006, at 2:21 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ asked defendant ZAMBRANO to bring him one pound of methamphetamine, and defendant ZAMBRANO agreed.

65. On October 13, 2006, at 12:55 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ complained to defendant DIAZ about the actual weight of the pounds of methamphetamine that defendant DIAZ had sold him.

66. On October 13, 2006, at 9:48 p.m., using coded language during a telephone conversation, defendant RENAUDO ordered four more ounces of methamphetamine from defendant V.RAMIREZ.

67. On October 18, 2006, at 12:02 p.m., using coded language during a telephone conversation, co-conspirator Sotelo and defendant V.RAMIREZ agreed to a meeting at 1:30 p.m. regarding a methamphetamine transaction.

68. On October 19, 2006, at co-conspirator Mueller's residence in Long Beach, California, co-conspirator Mueller stored a blue safe that had the words "Carmelas Sillyboy Hands Off" written on it in black marker, which contained, among other things, a black digital scale, a drug ledger, and approximately 53.9 grams of a mixture or substance containing a detectable amount of methamphetamine that was 71.8% pure (yielding 38.7 grams of actual methamphetamine).

69. On October 19, 2006, co-conspirator Sotelo possessed keys to the blue safe that was stored at co-conspirator Mueller's residence.

70. On October 20, 2006, at 12:40 p.m., using coded language during a telephone conversation, co-conspirator Sotelo told defendant V.RAMIREZ that co-conspirator Sotelo had just bailed out of jail after being arrested yesterday, and advised defendant V.RAMIREZ to shut down defendant V.RAMIREZ's drug operation because the police told co-conspirator Sotelo that they had been watching co-conspirator Sotelo for about eight months.

71. On October 26, 2006, at 10:05 a.m., using coded language during a telephone conversation, defendant V.RAMIREZ said that he had a new telephone number because "people" he knows

had gotten "busted," and defendant DIAZ said that he would call defendant V.RAMIREZ at the new number.

72. On November 9, 2006, at 6:55 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ told defendant RUIZ that defendant REAL would be coming to pick up two ounces of methamphetamine.

73. On November 10, 2006, at 9:18 p.m., using coded language during a telephone conversation, defendant WHEAT ordered four ounces of methamphetamine from defendant V.RAMIREZ.

74. On November 11, 2006, at 7:58 a.m., using coded language during a telephone conversation, defendant V.RAMIREZ asked defendant ZAMBRANO to bring him one pound of methamphetamine, and defendant ZAMBRANO agreed.

75. On November 14, 2006, at 9:56 a.m., using coded language during a telephone conversation, defendant V.RAMIREZ told defendant MCCOY to pay the money she owed him because he needed the money to get methamphetamine from his supplier.

76. On November 14, 2006, at 5:56 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ told defendant RUIZ that defendant REAL would be coming by to pick up two ounces of methamphetamine.

77. On November 15, 2006, at 11:22 a.m., using coded language during a telephone conversation, defendant HESS ordered one ounce of methamphetamine from defendant V.RAMIREZ.

78. On November 15, 2006, at 11:28 a.m., using coded language during a telephone conversation, defendant V.RAMIREZ told defendant EDWARDS that he had four ounces of methamphetamine for defendant EDWARDS.

79. On November 15, 2006, at 12:47 p.m., using coded language during a telephone conversation, defendant HESS told defendant V.RAMIREZ that he was around the corner, and asked defendant V.RAMIREZ to also sell him another quarter of methamphetamine.

80. On November 15, 2006, at 3:29 p.m., using coded language during a telephone conversation, defendant ZAMBRANO told defendant V.RAMIREZ that there were two pounds of methamphetamine left at defendant ZAMBRANO's residence.

81. On November 15, 2006, at 5:36 p.m., using coded language during a telephone conversation, defendant WHEAT ordered two ounces of methamphetamine from defendant V.RAMIREZ.

82. On November 15, 2006, at 8:19 p.m., using coded language during a telephone conversation, defendant ANTONUCCI ordered two ounces of methamphetamine, which defendant V.RAMIREZ agreed to supply.

83. On November 15, 2006, at 8:20 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ instructed defendant RUIZ to give two ounces of methamphetamine to defendant ANTONUCCI for $1,100, and she agreed.

84. On November 16, 2006, at 1:41 p.m., using coded language during a telephone conversation, defendant DIAZ agreed to supply defendant V.RAMIREZ with 10 pounds of methamphetamine, and agreed that defendant V.RAMIREZ would pay for eight pounds up front.

85. On November 16, 2006, at 6:22 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ instructed defendant RUIZ to get money from defendant R.RAMIREZ's

house for defendant V.RAMIREZ.

86. On November 17, 2006, at 1:34 p.m., using coded language during a telephone conversation, defendant AGUILAR and defendant LIAN agreed to sell three pounds of methamphetamine to defendant V.RAMIREZ at a price of $9,600 per pound.

87. On November 17, 2006, at 5:14 p.m., using coded language during a telephone conversation, defendant WHEAT ordered two ounces of methamphetamine from defendant V.RAMIREZ.

88. On November 18, 2006, at 2:28 p.m., using coded language during a telephone conversation, defendant TORRES ordered a quarter ounce of methamphetamine from defendant V.RAMIREZ.

89. On November 19, 2006, at 12:41 p.m., using coded language during a telephone conversation, defendant TORRES ordered another quarter ounce of methamphetamine from defendant V.RAMIREZ.

90. On November 21, 2006, at 10:40 a.m., using coded language during a telephone conversation, defendant V.RAMIREZ told defendant EDWARDS that he was bringing six ounces of methamphetamine to defendant EDWARDS.

91. On November 21, 2006, at 1:05 p.m., using coded language during a telephone conversation, defendant MCCOY told defendant V.RAMIREZ that she was going to give defendant RUIZ the $550 she owed him, and asked defendant V.RAMIREZ if defendant RUIZ had one ounce for defendant MCCOY.

92. On November 22, 2006, at 11:50 a.m., using coded language during a telephone conversation, defendant V.RAMIREZ agreed to supply six ounces of methamphetamine to defendant

RENAUDO.

93. On November 22, 2006, at 12:53 p.m., using coded language during a telephone conversation, defendant WHEAT ordered two ounces of methamphetamine from defendant V.RAMIREZ.

94. On November 22, 2006, at 3:48 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ instructed defendant RUIZ to give two ounces of methamphetamine to defendant WHEAT, who would give her $1,100.

95. On November 22, 2006, at 3:48 p.m., using coded language during a telephone conversation, defendant RUIZ told defendant V.RAMIREZ that defendant RENAUDO had given her $800, which she put away for defendant V.RAMIREZ, and that she gave six ounces of methamphetamine to defendant RENAUDO.

96. On November 25, 2006, at 12:23 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ told defendant ANTONUCCI that he had one ounce of methamphetamine for defendant ANTONUCCI and would send someone to deliver it.

97. On November 28, 2006, at 12:38 p.m., using coded language during a telephone conversation, defendant HESS ordered one and one-quarter ounce of methamphetamine from defendant V.RAMIREZ.

98. On November 28, 2006, at 4:31 p.m., using coded language during a telephone conversation, defendant EDWARDS ordered five ounces of methamphetamine from defendant V.RAMIREZ.

99. On November 28, 2006, at 6:57 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ instructed defendant RUIZ to get drug proceeds and give them to defendant R.RAMIREZ for transport to defendant R.RAMIREZ's

residence.

100. On November 29, 2006, at 9:53 a.m., using coded language during a telephone conversation, defendant V.RAMIREZ instructed defendant RUIZ to give four ounces of methamphetamine to defendant ORTIZ for $2,200, and she agreed.

101. On November 29, 2006, at 2:11 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ asked defendant ZAMBRANO to deliver a pound of methamphetamine to defendant J.RODRIGUEZ's residence, and defendant ZAMBRANO agreed.

102. On November 29, 2006, at 8:18 p.m., using coded language during a telephone conversation, defendant J.RODRIGUEZ told defendant D.RODRIGUEZ that she was ready for defendant ZAMBRANO to deliver methamphetamine to her location.

103. On November 30, 2006, at 11:38 a.m., using coded language during a telephone conversation, defendant V.RAMIREZ and defendant EDWARDS negotiated an exchange of methamphetamine for firearms.

104. On November 30, 2006, at 5:05 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ told defendant J.RODRIGUEZ that defendant ZAMBRANO would be picking up money and dropping off methamphetamine at her residence.

105. On November 30, 2006, at 9:00 p.m., defendant EDWARDS possessed approximately 101.3 grams of actual methamphetamine, and approximately $1,022 in drug proceeds at his residence in Long Beach, California.

106. On December 1, 2006, at 6:44 a.m., using coded language during a telephone conversation, defendant V.RAMIREZ told

defendant R.RAMIREZ that defendant V.RAMIREZ's friend had been raided by the police, and defendant V.RAMIREZ instructed defendant R.RAMIREZ to get a safe and place in it defendant V.RAMIREZ's drug proceeds that were stored at defendant R.RAMIREZ's residence, and defendant R.RAMIREZ agreed.

107. On December 1, 2006, at 10:29 a.m., using coded language during a telephone conversation, defendant V.RAMIREZ told defendant MUNGARRO that defendant RENAUDO would be picking up three ounces of methamphetamine and dropping off money for defendant V.RAMIREZ.

108. On December 1, 2006, at 10:31 a.m., using coded language during a telephone conversation, defendant V.RAMIREZ told defendant REAL to pick up defendant V.RAMIREZ's .357 pistol from his distribution location, and defendant REAL agreed.

109. On December 1, 2006, at 10:41 a.m., using coded language during a telephone conversation, defendant V.RAMIREZ instructed defendant RUIZ to destroy a scale, and give a package of cutting agent to defendant MUNGARRO.

110. On December 1, 2006 at 11:44 a.m., defendant MUNGARRO delivered three ounces of methamphetamine to defendant RENAUDO, on behalf of defendant V.RAMIREZ, and picked up $3,000 from defendant RENAUDO.

111. On December 1, 2006, at 5:58 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ agreed to supply eight ounces of methamphetamine to defendant RENAUDO, and asked defendant RENAUDO to give defendant V.RAMIREZ the money owed to him.

112. On December 2, 2006, at 12:11 p.m., using coded

language during a telephone conversation, defendant V.RAMIREZ told defendant ZAMBRANO that the pound of methamphetamine that defendant ZAMBRANO brought was three ounces short.

113. On December 4, 2006, at 1:47 p.m., using coded language during a telephone conversation, defendant HESS ordered two ounces of methamphetamine from defendant V.RAMIREZ, which defendant V.RAMIREZ agreed to supply.

114. On December 4, 2006, at 2:08 p.m., using coded language during a telephone conversation, defendant D.RODRIGUEZ told defendant RUIZ that defendant HESS was on his way over to pick up two ounces of methamphetamine for $1,100.

115. On December 6, 2006, at 1:39 p.m., using coded language during a telephone conversation, defendant HURLEY ordered a half ounce of methamphetamine from defendant V.RAMIREZ.

116. On December 6, 2006, at 1:41 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ agreed to give defendant HURLEY a half ounce of methamphetamine, and asked her to pick it up.

117. On December 6, 2006, at 9:25 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ told defendant ANTONUCCI to give $550 to an unindicted co-conspirator who was to take the money to defendant RUIZ, get one ounce of methamphetamine from defendant RUIZ for defendant ANTONUCCI, and deliver the methamphetamine to defendant ANTONUCCI.

118. On December 7, 2006, at 5:46 p.m., using coded language during a telephone conversation, defendant REAL told defendant V.RAMIREZ that he had $1,000 for defendant V.RAMIREZ and would drop it off at defendant RUIZ's location.

B.BAILEY.

126. On January 11, 2007, at 5:28 p.m., using coded language during a telephone conversation, defendant D.RODRIGUEZ asked defendant ZAMBRANO to bring her and defendant V.RAMIREZ one pound of methamphetamine, and defendant ZAMBRANO agreed.

127. On January 12, 2007, at 9:27 a.m., using coded language during a telephone conversation, defendant V.RAMIREZ said he would sell a quarter-pound of methamphetamine to defendant B.BAILEY for a price of $2,200.

128. On January 12, 2007, at 12:42 p.m., using coded language during a telephone conversation, defendant O'CONNELL said that the other day he had left money for defendant V.RAMIREZ with defendant RUIZ, including money toward defendant O'CONNELL's next methamphetamine purchase.

129. On January 12, 2007, at 12:57 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ agreed to supply two ounces of methamphetamine to defendant ANTONUCCI.

130. On January 12, 2007, at 1:32 p.m., using coded language during a telephone conversation, defendant ANTONUCCI said that he would go to defendant V.RAMIREZ's location to pick up two ounces of methamphetamine.

131. On January 12, 2007, at 2:15 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ told defendant O'CONNELL that defendant V.RAMIREZ left one ounce of methamphetamine with defendant RUIZ for defendant O'CONNELL.

132. On January 12, 2007, at 6:30 p.m., in Long Beach, California, defendant ANTONUCCI possessed approximately 57.59

119. On December 7, 2006, at 6:09 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ told defendant F.OROPEZA that defendant REAL would be picking up two ounces of methamphetamine and dropping off $1,000 at defendant RUIZ's location.

120. On January 5, 2007, at 5:11 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ agreed to supply eight ounces of methamphetamine to defendant RENAUDO.

121. On January 6, 2007, at 3:18 p.m., using coded language during a telephone conversation, defendant NUNEZ ordered four ounces of methamphetamine from defendant V.RAMIREZ.

122. On January 10, 2007, at 12:32 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ told defendant THEROUX that he had $5,900 of methamphetamine for defendant THEROUX, which he would leave with defendant RUIZ.

123. On January 10, 2007, at 3:54 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ told defendant RUIZ that defendant THEROUX was supposed to give defendant RUIZ $5,900, and defendant RUIZ should give defendant THEROUX the package with two bags in it.

124. On January 10, 2007, at 4:27 p.m., using coded language during a telephone conversation, defendant B.BAILEY said that he had money that he owed to defendant V.RAMIREZ for a prior methamphetamine purchase.

125. On January 10, 2007, at 4:27 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ told defendant B.BAILEY to give $550 to defendant RUIZ, and defendant V.RAMIREZ would supply two ounces of methamphetamine to defendant

grams of a mixture or substance containing a detectable amount of methamphetamine.

133. On January 14, 2007, at 11:10 a.m., using coded language during a telephone conversation, defendant REAL ordered two ounces of methamphetamine from defendant V.RAMIREZ.

134. On January 14, 2007, at 1:38 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ asked defendant ZAMBRANO to take one pound of methamphetamine to defendant J.RODRIGUEZ's residence, and defendant ZAMBRANO agreed.

135. On January 16, 2007, at 3:31 p.m., using coded language during a telephone conversation, defendant ZAMBRANO said that he would buy cutting agent for defendant V.RAMIREZ and deliver it to defendant J.RODRIGUEZ's residence.

136. On January 16, 2007, at 4:03 p.m., using coded language during a telephone conversation, defendant D.RODRIGUEZ told defendant J.RODRIGUEZ that defendant ZAMBRANO was coming, and defendant J.RODRIGUEZ should give him money.

137. On January 17, 2007, at 3:48 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ told an unindicted co-conspirator that defendant DIAZ had sold defendant V.RAMIREZ poor quality methamphetamine, and defendant V.RAMIREZ wanted to exchange eight pounds of methamphetamine.

138. On January 18, 2007, at 12:28 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ instructed defendant RUIZ to give six ounces of methamphetamine to defendant RENAUDO, who would give her $3,000.

139. On January 18, 2007, at 12:50 p.m., using coded language during a telephone conversation, defendant ORTIZ told

defendant V.RAMIREZ that he was ready to pick up methamphetamine he ordered.

140. On January 18, 2007, at 1:20 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ instructed defendant RUIZ to make a package of four ounces of methamphetamine for defendant ORTIZ.

141. On January 18, 2007, at 5:12 p.m., using coded language during a telephone conversation, defendant NUNEZ told defendant V.RAMIREZ that he should tell defendant RUIZ that defendant NUNEZ would be buying two ounces of methamphetamine.

142. On January 18, 2007, at 5:14 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ told defendant RUIZ that defendant NUNEZ would be coming by to give her $1,100, and instructed defendant RUIZ to give defendant NUNEZ two ounces of methamphetamine.

143. On January 19, 2007, at 5:49 p.m., using coded language during a telephone conversation, defendant HURLEY ordered half an ounce of methamphetamine from defendant V.RAMIREZ.

144. On January 20, 2007, at 12:41 p.m., using coded language during a telephone conversation, defendant ZAMBRANO agreed to bring pounds of methamphetamine to defendant V.RAMIREZ so defendant V.RAMIREZ could exchange them.

145. On January 20, 2007, at 12:54 p.m., using coded language during a telephone conversation, defendant DIAZ told defendant V.RAMIREZ that he would take back eight pounds of methamphetamine, and send defendant V.RAMIREZ good quality methamphetamine.

146. On January 20, 2007, at 5:19 p.m., using coded language

during a telephone conversation, defendant J.BAILEY ordered two ounces of methamphetamine from defendant V.RAMIREZ, which defendant V.RAMIREZ agreed to supply.

147. On January 20, 2007, at 6:53 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ told defendant EDWARDS that he would send defendant EDWARDS two ounces of methamphetamine.

148. On January 21, 2007, at 3:34 p.m., using coded language during a telephone conversation, defendant J.BAILEY ordered two ounces of methamphetamine from defendant V.RAMIREZ.

149. On January 21, 2007, at 3:37 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ instructed defendant D.RODRIGUEZ to prepare two-ounce packages of methamphetamine for defendant J.BAILEY.

150. On January 21, 2007, at 6:06 p.m., using coded language during a telephone conversation, defendant J.BAILEY ordered four more ounces of methamphetamine from defendant V.RAMIREZ, who agreed to sell it to defendant J.BAILEY for a price of $2,150.

151. On January 21, 2007, at 6:07 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ instructed defendant D.RODRIGUEZ to make packages of methamphetamine, and said that defendant J.BAILEY would be paying $2,150 for four ounces of methamphetamine, including one ounce for defendant B.BAILEY.

152. On January 22, 2007, at 6:28 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ agreed to sell defendant O'CONNELL one ounce of methamphetamine for $550.

153. On January 23, 2007, at 11:03 a.m., using coded

language during a telephone conversation, defendant V.RAMIREZ instructed defendant RUIZ to get money for defendant V.RAMIREZ to send to his supplier, and she agreed.

154. On January 23, 2007, at 12:34 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ told an unindicted co-conspirator that defendant V.RAMIREZ had $11,000 for defendant DIAZ.

155. On January 23, 2007, at 1:21 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ agreed to supply seven ounces of methamphetamine to defendant RENAUDO.

156. On January 23, 2007, at 1:22 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ told defendant RUIZ that defendant RENAUDO would be coming by to pick up methamphetamine and give her money for defendant V.RAMIREZ.

157. On January 23, 2007, at 1:22 p.m., using coded language during a telephone conversation, defendant V.RAMIREZ told defendant RUIZ to set one ounce of methamphetamine aside for defendant MCCOY, who was going to pick it up and give money to defendant RUIZ.

158. On January 24, 2007, at 10:41 a.m., using coded language during a telephone conversation, defendant V.RAMIREZ told defendant HESS that he could pick up one ounce of methamphetamine.

159. On January 24, 2007, at 3:54 p.m., using coded language during a telephone conversation, defendant DIAZ told defendant BAZUA that defendant DIAZ had four pounds of methamphetamine and the price was $9,000.

160. On January 24, 2007, at 3:54 p.m., using coded language

during a telephone conversation, defendant BAZUA agreed to buy methamphetamine from defendant DIAZ.

161. On January 24, 2007, at 8:13 p.m., using coded language during a telephone conversation, defendant DIAZ instructed an unindicted co-conspirator to give defendant BAZUA two pounds of methamphetamine, which defendant BAZUA would take to another person.

162. On January 25, 2007, in Whittier, California, defendants V.RAMIREZ and ZAMBRANO possessed approximately 739.3 grams of actual methamphetamine.

163. On January 25, 2007, in Lake Elsinore, California, defendants V.RAMIREZ and D.RODRIGUEZ possessed approximately $8,871 in drug proceeds.

164. On January 25, 2007, in Long Beach, California, defendant V.RAMIREZ possessed a firearm and ammunition at his distribution location.

165. On January 25, 2007, in Bellflower, California, defendants V.RAMIREZ and R.RAMIREZ possessed approximately $3,950 in drug proceeds.

166. On January 25, 2007, in Bellflower, California, defendants V.RAMIREZ, D.RODRIGUEZ, and J.RODRIGUEZ possessed approximately $25,800 in drug proceeds and cutting agent.

167. On January 25, 2007, in Lakewood, California, defendant RENAUDO possessed approximately $2,900 in drug proceeds.

168. On January 25, 2007, in Long Beach, California, defendant EDWARDS possessed approximately 80.1 grams of actual methamphetamine, and approximately $2,560 in drug proceeds.

COUNT TWO

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii)]

On or about November 30, 2006, in Los Angeles County, within the Central District of California, defendant JOHN CARDER EDWARDS knowingly and intentionally possessed with the intent to distribute at least 50 grams, that is, approximately 101.3 grams, of actual methamphetamine, a schedule II controlled substance.

COUNT THREE

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii)]

On or about January 25, 2007, in Los Angeles County, within the Central District of California, defendant JOHN CARDER EDWARDS knowingly and intentionally possessed with the intent to distribute at least 50 grams, that is, approximately 80.1 grams, of actual methamphetamine, a schedule II controlled substance.

COUNT FOUR

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii); 18 U.S.C. § 2(a)]

On or about January 25, 2007, in Los Angeles County, within the Central District of California, defendants VINCENT ANTHONY RAMIREZ, also known as ("aka") Toro, aka T, aka Big T, and MANUEL JOSEPH ZAMBRANO, aka Chico, aka Uncle Manuel, knowingly and intentionally possessed with intent to distribute, and aided, abetted, counseled, commanded, induced and procured the possession with intent to distribute, at least 50 grams, that is, approximately 739.3 grams, of actual methamphetamine, a schedule II controlled substance.

COUNT FIVE

[21 U.S.C. §§ 861(a)(1), 841(a)(1)]

On or about September 5, 2006, in Los Angeles County, within the Central District of California, defendant VINCENT ANTHONY RAMIREZ, also known as ("aka") Toro, aka T, aka Big T, an adult of at least eighteen years of age, knowingly and intentionally employed, hired, used, persuaded, induced, enticed, and coerced R.R., a minor under the age of eighteen, to distribute methamphetamine, a schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1).

COUNT SIX

[21 U.S.C. §§ 861(a)(1), 841(a)(1)]

On or about September 14, 2006, in Los Angeles County, within the Central District of California, defendant VINCENT ANTHONY RAMIREZ, also known as ("aka") Toro, aka T, aka Big T, an adult of at least eighteen years of age, knowingly and intentionally employed, hired, used, persuaded, induced, enticed, and coerced R.R., a minor under the age of eighteen, to distribute methamphetamine, a schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1).

COUNTS SEVEN THROUGH TWENTY-TWO

[21 U.S.C. § 843(b)]

On or about the dates and times set forth below, in Los Angeles County, within the Central District of California, the defendants listed below knowingly and intentionally used a communication facility, namely, a telephone, in committing and causing and facilitating the commission of a felony drug offense, namely, the conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of Title 21, United States Code, Sections 841 and 846, as charged in Count One:

| **Count** | **Date/Time** | **Defendant** |
|---|---|---|
| SEVEN | 9/6/06 1:35 pm | SHEILA ANN MCCOY |
| EIGHT | 9/10/06 11:31 am | JIMMY AREVALO, aka Dreamer |
| NINE | 9/10/06 2:54 pm | JOANNE CARMEN RODRIGUEZ |
| TEN | 9/12/06 12:55 pm | DESIREE IRENE RODRIGUEZ, aka Des |
| ELEVEN | 9/14/06 4:06 pm | DANIEL MICHAEL TORRES, aka Bird |
| TWELVE | 9/14/06 8:25 pm | CHARLES LEE THEROUX |
| THIRTEEN | 9/19/06 6:44 pm | ESEQUIEL OROPEZA, aka Fernie |
| FOURTEEN | 10/7/06 9:58 am | FELICIA C. OROPEZA |
| FIFTEEN | 11/29/06 9:53 am | ERMINA RUIZ, aka Billie |
| SIXTEEN | 12/1/06 6:44 am | RAYMOND RAMIREZ, aka Butter, aka Chacho |
| SEVENTEEN | 12/1/06 10:43 am | JOSEPH MARTINEZ MUNGARRO, aka Uncle Joe |
| EIGHTEEN | 12/4/06 1:47 pm | ROBERT EUGENE HESS |

| | | |
|---|---|---|
| NINETEEN | 12/6/06 1:39 pm | HERLENE HURLEY, aka Charlene |
| TWENTY | 1/10/07 4:27 pm | BRIAN BAILEY, aka Glassman |
| TWENTY-ONE | 1/21/07 3:34 pm | JAMES BAILEY, aka Jimbo |
| TWENTY-TWO | 1/22/07 6:28 pm | DANIEL TIMOTHY O'CONNELL |

COUNT TWENTY-THREE

[18 U.S.C. § 922(g)(1)]

On or about January 25, 2007, in Los Angeles County, within the Central District of California, defendant VINCENT ANTHONY RAMIREZ, also known as ("aka") Toro, aka T, aka Big T, knowingly possessed a firearm, namely, a Colt model Trooper Mk III, .357 Magnum caliber revolver bearing serial number 8427J, in and affecting interstate and foreign commerce.

Such possession occurred after defendant had been convicted of the following felony crime punishable by a term of imprisonment exceeding one year, namely, Possession of Cocaine, in violation of California Health and Safety Code Section 11350(a), in the Superior Court of the State of California, County of Los Angeles, case number A482790, on or about November 2, 1989.

COUNT TWENTY-FOUR

[18 U.S.C. § 1956(h)]

A. OBJECTS OF THE CONSPIRACY

Beginning on an unknown date and continuing until in or about April 2009, in Los Angeles and Riverside Counties, within the Central District of California and elsewhere, defendants VINCENT ANTHONY RAMIREZ, also known as ("aka") Toro, aka T, aka Big T ("V.RAMIREZ") and MANUEL JOSEPH ZAMBRANO, aka Chico, aka Uncle Manuel ("ZAMBRANO"), and others known and unknown to the Grand Jury, knowing that property involved in financial transactions represented the proceeds of some form of unlawful activity, which property was, in fact, the proceeds of specified unlawful activity, that is, illegal distribution of controlled substances, in violation of 21 U.S.C. § 841, knowingly conspired and agreed with each other to knowingly and intentionally commit the following offenses against the United States:

1. to conduct and attempt to conduct financial transactions knowing that the transactions were designed in whole or in part to conceal or disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and

2. to engage and attempt to engage in monetary transactions in criminally deprived property of a value greater than $10,000, in violation of 18 U.S.C. § 1957.

B. MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

The objects of the conspiracy were to be accomplished in substance as follows:

1. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 14 of Section B of Count One setting forth the means of the conspiracy charged in Count One.

2. Defendant V.RAMIREZ would receive large amounts of cash from known and unknown co-conspirators, representing proceeds from the distribution of methamphetamine.

3. Defendant V.RAMIREZ would provide the proceeds of illegal drug trafficking to defendant ZAMBRANO

4. Defendant ZAMBRANO would deposit the proceeds of illegal drug trafficking in to an account in his name.

5. Defendant ZAMBRANO would use the proceeds to make mortgage payments on a residence purchased by defendant ZAMBRANO for the benefit of defendant V.RAMIREZ, and to disguise the source of the proceeds.

C. <u>OVERT ACTS</u>

In furtherance of the conspiracy and to accomplish the objects of the conspiracy, defendants V.RAMIREZ and ZAMBRANO, and others known and unknown to the Grand Jury, committed various overt acts on or about the following dates, within the Central District of California, including, but not limited to, the following:

1. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 168 of Section C of Count One setting forth the overt acts of the conspiracy charged in Count One.

2. On or before February 6, 2006, defendant V.RAMIREZ gave defendant ZAMBRANO $8,000 in drug proceeds.

3. On February 6, 2006, defendant ZAMBRANO deposited $8,000 of drug proceeds into Union Bank of California account

number XXXXX7211, an account in the name of defendant ZAMBRANO.

4. On or before March 6, 2006, defendant V.RAMIREZ gave defendant ZAMBRANO $8,000 in drug proceeds.

5. On March 6, 2006, defendant ZAMBRANO deposited $8,000 of drug proceeds into Union Bank of California account number XXXXX7211, an account in the name of defendant ZAMBRANO.

6. On or about March 10, 2006, defendant ZAMBRANO and an unindicted co-conspirator purchased a residence on Westlynn Drive, Lake Elsinore, California ("the Westlynn Drive Residence"), with proceeds from loans in the amounts of $360,603 and $40,067.

7. In or after March 2006, defendant V.RAMIREZ moved into the Westlynn Drive Residence and continued to reside there.

8. On or about November 30, 2006, defendant V.RAMIREZ gave $3,000 of drug proceeds to defendant ZAMBRANO in order for defendant ZAMBRANO to make mortgage payments on the Westlynn Drive Residence.

9. On or about December 1, 2006, defendant ZAMBRANO deposited $3,000 of drug proceeds provided by defendant V.RAMIREZ into Union Bank of California account number XXXXX7211, an account in the name of defendant ZAMBRANO.

10. On or about December 1, 2006, defendant ZAMBRANO wrote checks drawn on Union Bank of California account number XXXXX7211, an account in his name, for the purpose of making mortgage payments on the Westlynn Drive Residence.

11. On or about January 25, 2007, defendant V.RAMIREZ possessed at the Westlynn Drive Residence $8,871 in drug proceeds.

COUNT TWENTY-FIVE

[21 U.S.C. § 853]

1. Pursuant to Title 21, United States Code, Section 853, defendants VINCENT ANTHONY RAMIREZ, also known as ("aka") Toro, aka T, aka Big T, RAYMOND RAMIREZ, aka Butter, aka Chacho, DESIREE IRENE RODRIGUEZ, aka Des, JOANNE CARMEN RODRIGUEZ, ERMINA RUIZ, aka Billie, MANUEL JOSEPH ZAMBRANO, aka Chico, aka Uncle Manuel, ADRIAN AGUILAR, ARMANDO BAZUA, aka Archie, DAVID DIAZ, aka Scrappy, aka Gato, JOSE ANTONIO LIAN, aka Buzzard, VITO ALBERTO ANTONUCCI, JIMMY AREVALO, aka Dreamer, BRIAN BAILEY, aka Glassman, JAMES BAILEY, aka Jimbo, JOHN CARDER EDWARDS, ROBERT EUGENE HESS, HERLEEN HURLEY, aka Charlene, SHEILA ANN MCCOY , JOSEPH MARTINEZ MUNGARRO, JR, aka Uncle Joe, CARLA MARIE NUNEZ, DANIEL TIMOTHY O'CONNELL, ESEQUIEL OROPEZA, aka Fernie, FELICIA C. OROPEZA, MARK ANTHONY ORTIZ, ANDY REAL, aka Pretty Boy, JOHN SCOTT RENAUDO, CHARLES LEE THEROUX, DANIEL MICHAEL TORRES, aka Bird, and PAUL RICHARD WHEAT shall forfeit to the United States the following property:

a. All right, title, and interest in any and all property --

(i) constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offenses described in Counts One through Twenty-two; and

(ii) any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offense, including, but not limited to a sum of money

equal to the total value of the property described in paragraph 1(a)(i).

b. A sum of money equal to the total value of the property described in paragraph 1(a)(i), representing the amount of proceeds obtained as a result of the offenses for which the defendants are jointly and severally liable.

2. Pursuant to Title 21, United States Code, Section 853(p), each defendant shall forfeit substitute property, up to the value of the amount described in paragraph 1, if, by any act or omission of the defendant, the property described in paragraph 1, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to or deposited with a third party; has been substantially diminished in value; or has been commingled with other property that cannot be divided without difficulty.

COUNT TWENTY-SIX

[18 U.S.C. § 924(d); 28 U.S.C. § 2461(c)]

1. The allegations contained in Count Twenty-three of this Indictment are hereby repeated, re-alleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461(c). Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to defendant VINCENT ANTHONY RAMIREZ, also known as ("aka") Toro, aka T, aka Big T, that the United States will seek forfeiture as part of any sentence in accordance with said statutes.

2. Upon conviction of the offense alleged in Count Twenty-three of this Indictment, said defendant shall forfeit to the United States all firearms and ammunition involved or used in the commission of such offense, including but not limited to the following: a Colt model Trooper Mk III, .357 Magnum caliber revolver bearing serial number 8427J.

COUNT TWENTY-SEVEN

[18 U.S.C. § 982(a)(1)]

1. Pursuant to Title 18, United States Code, Section 982(a)(1), each defendant who is convicted of the offense set forth in Count Twenty-four of this indictment shall forfeit to the United States the following property:

a. All right, title, and interest in any and all property involved in each offense in violation of Title 18, United States Code, Sections 1956 and 1957, or conspiracy to commit such offense, for which the defendant is convicted, and all property traceable to such property, including the following:

(i) all money or other property that was the subject of each transaction, transportation, transmission or transfer in violation of Title 18, United States Code, Sections 1956 and 1957;

(ii) all commissions, fees and other property constituting proceeds obtained as a result of those violations; and

(iii) all property used in any manner or part to commit or to facilitate the commission of those violations.

b. A sum of money equal to the total amount of money involved in each offense, or conspiracy to commit such offense, for which the defendant is convicted. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

2. Pursuant to Title 18, United States Code, Section 982(b), each defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in paragraph 1, if, by any act or omission of the defendant, the property described in paragraph 1, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/

Foreperson

THOMAS P. O'BRIEN
United States Attorney

Christine C. Ewell

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

TIMOTHY J. SEARIGHT
Assistant United States Attorney
Chief, OCDETF Section

JENNIFER A. CORBET
Assistant United States Attorney
OCDETF Section